**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| INTERSTATE PATENTS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MOTIVE TECHNOLOGIES, INC., KLX ENERGY SERVICES HOLDINGS, INC., and KLX ENERGY SERVICES LLC,<br><br>    Defendants. | CIVIL ACTION NO. 7:26-cv-150<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Interstate Patents, LLC ("Interstate Patents" or "Plaintiff") files this original complaint against Defendants Motive Technologies, Inc. ("Motive"), KLX Energy Services Holdings, Inc., and KLX Energy Services LLC, (collectively, "KLX Energy" and together with Motive, "Defendants"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This action concerns Defendants' infringement of the following United States Patents (the "Asserted Patents"):

| U.S. Patent No. | Title |
|---|---|
| 8,098,277 | Systems and Methods for Communication Between a Reactive Video System and a Mobile Communication Device |
| RE44,797 | Apparatus, Method and Computer Program Product Providing User Equipment Operation by Considering Scheduling Information With Regard to the Use of Relative Grants |

| 7,639,943 | Computer-Implemented System and Method for Automated Image Uploading and Sharing From Camera-Enabled Mobile Devices |
| 7,460,737 | Method and Apparatus for Photograph Finding |
| 7,388,848 | Method and Apparatus for Transport Format Signaling With HARQ |
| 7,251,535 | Location Based Diagnostics Method and Apparatus |

## PARTIES

2.      Interstate Patents is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 1909 Lohman Ford Road, Lago Vista, TX 78645.

3.      Motive Technologies, Inc. is a corporation duly organized and existing under the laws of Delaware.  Motive Technologies, Inc. may be served through its registered agent Incorporating Services, Ltd. at 3610-2 N. Josey, Suite 223, Carrollton, Texas 75007.  Motive Technologies, Inc. was formerly called KeepTruckin, Inc. but changed to its current name in 2022.

4.      KLX Energy Services Holdings, Inc. is a corporation duly organized and existing under the laws of Delaware.  KLX Energy Services Holdings, Inc. may be served through its registered agent Capitol Corporate Services, Inc. at 1501 S Mopac Expressway, Suite 220, Austin, Texas 78746.

5.      KLX Energy Services LLC is a company duly organized and existing under the laws of Delaware.  KLX Energy Services LLC may be served through its registered agent Capitol Corporate Services, Inc. at 1501 S Mopac Expressway, Suite 220, Austin, Texas 78746.

6.      The KLX Energy defendants identified in paragraphs 4-5 above are part of an interrelated group of companies which together comprise one of the nation's leading "onshore

provider of mission critical oilfield services focused on completion, intervention and production activities for the most technically demanding wells."[1]

7.    The KLX Energy defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular.

8.    The KLX Energy defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

9.    The KLX Energy defendants named above and their affiliates regularly contract with customers regarding products made for or on behalf of those customers.

10.    Thus, the KLX Energy defendants named above and their affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

11.    The parties to this action are properly joined under 35 U.S.C. § 299 because the right to relief asserted against Defendants jointly and severally arises out of the same series of transactions or occurrences relating to the making and using of the same products or processes, including trucking and logistics technologies and related processes bearing at least the Motive and/or KeepTruckin brands or that are otherwise made for use with services provided by Defendants.  Additionally, questions of fact common to all defendants will arise in this action.

---

[1] https://investor.klx.com/

3

## JURISDICTION AND VENUE

12.     This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

13.     This Court has personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas; and (ii) Defendants have committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and/or sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein; and (iii) KLX Energy Services Holdings, Inc., KLX Energy Services LLC, and Motive Technologies, Inc. are registered to do business in Texas.

14.     Venue is proper in this district as to Defendants pursuant to 28 U.S.C. § 1400(b). Venue is further proper because Defendants have committed and continue to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in this district, and/or committing at least a portion of any other infringements alleged herein in this district, including directing and/or controlling the performance of at least one step of each exemplary method claim in this district.  Defendants also have regular and established places of business in this district. For example, Motive has a regularly established place of business at least at 924 E 7th Street, Suite 350, Austin, Texas 78702

and KLX Energy has a regularly established place of business at least at 1031 Andrews Highway, Suite 305, Midland, Texas 79707.



Site: gomotive.com/company/contact-us/



Site: https://klx.com/operating-regions/permian/

15.    Defendants employ or otherwise control individuals that work from these places of business in this district, and Defendants' business specifically depends on such persons being physically present at such places to, for example, support Defendants' customers.

## THE ACCUSED PRODUCTS

16.    KLX Energy owns, operates, advertises, and/or controls products and services that include and/or use systems and/or methods provided by Motive and/or its agents.  *See* Exhibit A.

17.    KLX Energy extensively promotes its implementations of Motive products and solutions.  For example, KLX Energy advertises that "KLX Energy Services Reduced At-fault Incidents by 68% and Achieved Full ROI in One Year with Motive."  *Id.*

18.    KLX Energy uses, causes to be used (including by contracting with Motive to perform specified tasks on its behalf), sells, offers for sale, provides, supplies, and/or distributes

6

fleet management and tracking solutions and similar products utilizing systems and/or methods

provided by Motive, including, but not limited to, the Motive AI Dashcam, Motive Vehicle

Gateway, Motive AI Omnicam, Motive GPS Fleet Tracking, Motive's Driver & Fleet Safety,

Motive Driver Safety, Motive Fleet Management, additional products included in the Motive

Platform, other substantially similar products and services offered in the past or the future, and

all prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along

with any associated hardware, software, applications, and functionality associated with those

products and solutions (collectively, the "Accused Products").  *See* Exhibit A; *see also* Exhibits

1-6.

19.     Using the Accused Products, Defendants track, analyze, and report vehicle

locations, vehicle maintenance needs, and driver behavior associated with its fleet vehicles,

receive and manage real-time alerts for vehicle and driver events, monitor and coach driver

safety through integrated dashcam video, and allow for communication between fleet managers

and remote in-vehicle units—including, for example, advisory notifications and diagnostic data

transmissions.  *See* Exhibit A.

20.     For these reasons and the additional reasons detailed below, the Accused Products

practice at least one claim of each of the Asserted Patents.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,098,277

21.     On January 17, 2012, United States Patent No. 8,098,277 ("the '277 Patent") was

duly and legally issued by the United States Patent and Trademark Office for an invention

entitled "Systems and Methods for Communication Between a Reactive Video System and a

Mobile Communication Device."

22.     Interstate Patents is the owner of the '277 Patent, with all substantive rights in and

to that patent, including the sole and exclusive right to prosecute this action and enforce the '277 Patent against infringers, and to collect damages for all relevant times.

23. Defendants made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, their Motive Driver Safety products that infringe the '277 Patent.

24. By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 14 of the '277 Patent. *See* Exhibit 1. Defendants' infringement in this regard is ongoing.

25. Defendants' Motive AI Dashcam & Driver Safety is an exemplary accused product.

26. Defendants directly infringe the '277 Patent when, for example, they and/or their agents used the accused products, including during testing of the accused products. Defendants also directly infringed the '277 Patent when the accused products were used after purchase by a customer or end user. For example, the accused products were built with hardware and/or software components that control the operation of the accused products. These components caused the accused products to perform the steps of the claimed invention after, for example, identifying individualized content. Defendants also directly infringed the '277 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (e.g., certification/testing providers), and/or their customers and end-users. Defendants contracted with, advised, and/or encouraged such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved reactive video system, receiving video data) from doing so. Defendants conditioned these benefits on, for example, such persons performing certain

8

activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., identified individualized content).

27.     Defendants have had knowledge of the '277 Patent at least as of the date when they were notified of the filing of this action.

28.     Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

29.     Interstate Patents has neither made nor sold unmarked articles that practice the '277 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '277 Patent.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. REISSUED PATENT NO. RE44,797

30.     On March 11, 2014, United States Reissued Patent No. RE44,797 ("the '797 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Apparatus, Method and Computer Program Product Providing User Equipment Operation by Considering Scheduling Information With Regard to the Use of Relative Grants."

31.     Interstate Patents is the owner of the '797 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '797 Patent against infringers, and to collect damages for all relevant times.

32.     Defendants made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, their Motive Driver Safety products.

9

33.    By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 53 of the '797 Patent.  *See* Exhibit 2.  Defendants' infringement in this regard is ongoing.

34.    Defendants' Motive Vehicle Gateway & Motive AI Omnicam are exemplary accused products.

35.    Defendants directly infringe the '797 Patent when, for example, they and/or their agents use the accused products, including during testing of the accused products.   Defendants also directly infringe the '797 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example, receiving a transmitted message.  Defendants also directly infringe the '797 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (e.g., certification/testing providers), and/or their customers and end-users.  Defendants contract with, advise, and/or encourage such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so.  Defendants condition these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving a transmitted message).

36.    Defendants have had knowledge of the '797 Patent at least as of the date when they were notified of the filing of this action.

37.     Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

38.     Interstate Patents has neither made nor sold unmarked articles that practice the '797 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '797 Patent.

**COUNT III**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,639,943**

39.     On December 29, 2009, United States Patent No. 7,639,943 ("the '943 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Computer-Implemented System and Method for Automated Image Uploading and Sharing From Camera-Enabled Mobile Devices."

40.     Interstate Patents is the owner of the '943 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '943 Patent against infringers, and to collect damages for all relevant times.

41.     Defendants made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, their Motive Driver Safety products that infringe the '943 Patent.

42.     By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '943 Patent.  *See* Exhibit 3.  Defendants' infringement in this regard is ongoing.

43.     Defendants' Motive AI Dashcam is an exemplary accused product.

44.     Defendants directly infringe the '943 Patent when, for example, they and/or their agents use the accused products, including during testing of the accused products.  Defendants also directly infringe the '943 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example, receiving a plurality of images.  Defendants also directly infringe the '943 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (e.g., certification/testing providers), and/or their customers and end-users.  Defendants contract with, advise, and/or encourage such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved processing of images without user action) from doing so.  Defendants condition these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving a plurality of images).

45.     Defendants have had knowledge of the '943 Patent at least as of the date when they were notified of the filing of this action.

46.     Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.     Interstate Patents has neither made nor sold unmarked articles that practice the '943 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '943 Patent.

**COUNT IV**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,460,737**

48.     On December 2, 2008, United States Patent No. 7,460,737 ("the '737 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Method and Apparatus for Photograph Finding."

49.     Interstate Patents is the owner of the '737 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '737 Patent against infringers, and to collect damages for all relevant times.

50.     Defendants used products and/or systems including, for example, their Motive Driver Safety products that infringe the '737 Patent.

51.     By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '737 Patent.  *See* Exhibit 4.  Defendants' infringement in this regard is ongoing.

52.     Defendants' Motive Driver & Fleet Safety product is an exemplary accused product.

53.     Defendants directly infringe the '737 Patent when, for example, they and/or their agents use the accused products, including during testing of the accused products.  Defendants also directly infringe the '737 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example,

13

receiving requests to search digital image data.  Defendants also directly infringe the '737 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (e.g., certification/testing providers), and/or their customers and end-users.  Defendants contract with, advise, and/or encourage such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved distribution of image data) from doing so.  Defendants condition these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., receiving requests to search digital image data).

54.    Defendants have had knowledge of the '737 Patent at least as of the date when they were notified of the filing of this action.

55.    Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56.    Interstate Patents has neither made nor sold unmarked articles that practice the '737 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '737 Patent.

## COUNT V
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,388,848

57.    On June 17, 2008, United States Patent No. 7,388,848 ("the '848 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Method and Apparatus for Transport Format Signaling With HARQ."

14

58.     Interstate Patents is the owner of the '848 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '848 Patent against infringers, and to collect damages for all relevant times.

59.     Defendants used products and/or systems including, for example, their Motive Driver Safety products that utilize 4G LTE technology.

60.     By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '848 Patent. *See* Exhibit 5.

61.     Defendants' Motive Vehicle Gateway & Motive AI Omnicam are exemplary accused products.

62.     Defendants directly infringed the '848 Patent when, for example, they and/or their agents used the accused products, including during testing of the accused products.  Defendants also directly infringed the '848 Patent when the accused products were used after purchase by a customer or end user.  For example, the accused products were built with hardware and/or software components that control the operation of the accused products.  These components caused the accused products to perform the steps of the claimed invention after, for example, receiving a current transmission that includes a predetermined bit pattern.  Defendants also directly infringed the '848 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (e.g., certification/testing providers), and/or their customers and end-users.  Defendants contracted with, advised and/or encouraged such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so.  Defendants conditioned these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions

15

that cause the accused products to perform the steps of the claimed method (e.g., after receiving a current transmission that includes a predetermined bit pattern).

63.    Defendants have had knowledge of the '848 Patent at least as of the date when they were notified of the filing of this action.

64.    Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.    Interstate Patents has neither made nor sold unmarked articles that practice the '848 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '848 Patent.

## COUNT VI
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,251,535

66.    On July 31, 2007, United States Patent No 7,251,535 ("the '535 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Location Based Diagnostics Method and Apparatus."

67.    Interstate Patents is the owner of the '535 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '535 Patent against infringers, and to collect damages for all relevant times.

68.    Defendants used products and/or systems including, for example, their Motive Fleet Management products that infringe the '535 Patent.

69.    By doing so, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '535 Patent.  *See* Exhibit 6.

16

70.     Defendants' Motive GPS Fleet Tracking product is an exemplary accused product.

71.     Defendants directly infringed the '535 Patent when, for example, they and/or their agents used the accused products, including during testing of the accused products. Defendants also directly infringed the '535 Patent when the accused products were used after purchase by a customer or end user. For example, the accused products were built with hardware and/or software components that control the operation of the accused products. These components caused the accused products to perform the steps of the claimed invention after, for example, performing diagnostic processes on operations. Defendants also directly infringed the '535 Patent by exercising direction or control over the use of the accused products by others, including their affiliates, their subsidiaries, their business partners (including certification and testing organizations), and/or their customers and end-users. Defendants contracted with, advised, and/or encouraged such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved enterprise operations) from doing so. Defendants conditioned these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., improved enterprise operations).

72.     Defendants have had knowledge of the '535 Patent at least as of the date when they were notified of the filing of this action.

73.     Interstate Patents has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Interstate Patents in an amount that

17

adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

74.    Interstate Patents has neither made nor sold unmarked articles that practice the '535 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '535 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INFRINGEMENT AND PERSONAL JURISDICTION

75.    Defendants have also indirectly infringed the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, by inducing others to directly infringe the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

76.    Defendants have induced the end users and/or Defendants' customers to directly infringe (literally and/or under the doctrine of equivalents) the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent by using the accused products.

77.    Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringe one or more claims of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, including, for example, claim 14 of the '277 Patent, claim 53 of the '797 Patent, claim 1 of the '943 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

78.    Such steps by Defendants included, among other things, advising or directing customers, end users, and others (including distributors and equipment services entities) to use the accused products in an infringing manner; advertising and promoting the use of the accused

18

products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.

79.    Defendants performed these steps, which constitute joint and/or induced infringement, with the knowledge of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent and with the knowledge that the induced acts constitute infringement.

80.    Defendants were and are aware that the normal and customary use of the accused products by Defendants' customers would infringe the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.  Defendants' inducement is ongoing for the '277 Patent, the '797 Patent, the '943 Patent, and the '737 Patent.

81.    Defendants have also induced their affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on their or their affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) at least claim 14 of the '277 Patent, claim 53 of the '797 Patent, claim 1 of the '943 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent by importing, selling or offering to sell the accused products.

82.    Defendants have a significant role in placing the accused products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in Texas and elsewhere in the United States.

83.    Defendants purposefully direct or control the making of accused products and their shipment to the United States, using established distribution channels, for sale in Texas and elsewhere within the United States.

84.    Defendants purposefully direct or control the sale of the accused products into established United States distribution channels, including sales to nationwide retailers, wholesalers, distributors, manufacturers, and design laboratories (including, but not limited to, Defendants' various affiliated and related companies).

85.    Defendants purposefully direct or control the sale of the accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expect and intend that the accused products will be so sold.

86.    Defendants purposefully place the accused products—whether by themselves or through subsidiaries, affiliates, or third parties—into an international supply chain, knowing that the accused products will be sold in the United States, including Texas.  Therefore, Defendants also facilitate the sale of the accused products in Texas.

87.    Defendants took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringe claim 14 of the '277 Patent, claim 53 of the '797 Patent, claim 1 of the '943 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

88.    Such steps by Defendants included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing their affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on their or their affiliates' behalf, to import, sell, or offer to sell the accused products in an infringing manner.

89.     Defendants performed these steps, which constitute induced infringement, with the knowledge of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, and with the knowledge that the induced acts would constitute infringement.

90.     Defendants performed such steps in order to profit from the eventual sale of the accused products in the United States.

91.     Defendants' inducement is ongoing.

92.     Defendants have also indirectly infringed by contributing to the infringement of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.  Defendants have contributed to the direct infringement of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent by the end user of the accused products.

93.     The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, including, for example, claim 14 of the '277 Patent, claim 53 of the '797 Patent, claim 1 of the '943 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

94.     The special features include, for example, hardware and/or software components especially adapted for scheduling information with regard to the use of relative grants, identifying individualized content, uploading images, analyzing and searching digital image data, providing a current transmission with a bit pattern, and/or specifying a triggering relationship,

21

used in a manner that infringe the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

95.    These special features constitute a material part of the invention of one or more of the claims of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

96.    Defendants' contributory infringement is ongoing.

97.    Defendants have had actual knowledge of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent at least as of the date when they were notified of the filing of this action.  Since at least that time, Defendants have known the scope of the claims of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, the products that practice the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, and that Interstate Patents is the owner of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

98.    By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '277 Patent, the '797 Patent, the '943 Patent, and the '737 Patent.

99.    Furthermore, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus have been willfully blind of Interstate Patents' patent rights. *See, e.g.*, M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008).

22

100.    Defendants' customers have infringed the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.  Defendants encouraged their customers' infringement.

101.    Defendants' direct and indirect infringement of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent have been, and/or continue to be willful, intentional, deliberate, and/or in conscious disregard of Interstate Patents' rights under the patents-in-suit.

102.    Interstate Patents has been damaged as a result of Defendants' infringing conduct alleged above.  Thus, Defendants are liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Interstate Patents hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Interstate Patents requests that the Court find in their favor and against Defendants, and that the Court grant Interstate Patents the following relief:

a.    Judgment that one or more claims of the '277 Patent, the '797 Patent, the '943 Patent, the '737 Patent, the '848 Patent, and the '535 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or all others acting in concert therewith;

b.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing the '277 Patent, the '797 Patent, the '943 Patent, and the '737 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of

23

the '277 Patent, the '797 Patent, the '943 Patent, and the '737 Patent by such entities;

      c.      Judgment that Defendants account for and pay to Interstate Patents all damages to and costs incurred by Interstate Patents because of Defendants' infringing activities and other conduct complained of herein, including an award of all increased damages to which Interstate Patents is entitled under 35 U.S.C. § 284;

      d.      That Interstate Patents be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

      e.      That this Court declare this an exceptional case and award Interstate Patents its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

      f.      That Interstate Patents be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: April 16, 2026

Respectfully submitted,

*/s/ Zachariah S. Harrington*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com
Hannah D. Price
Texas Bar No. 24116921
hannah@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Interstate Patents, LLC*